# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

January 22, 2020

**BY ECF**

Hon. Katherine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     **Re:** ***Coronel v. Royal Katsuei Inc., et al.***
        ***Case No. 19-CV-3054 (KHP)***

Dear Judge Parker,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defense counsel seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

  **I.** ***The Need for the Court's Approval of the Agreement***

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiff's Claim for Unpaid Wages

Plaintiff asserts causes of action pursuant to the FLSA and New York Labor Law for the recovery of, *inter alia*, unpaid minimum wages and overtime compensation.

Plaintiff is a former employee of the defendants' restaurant, who alleges that she was hired in or about May 2017 to work as a kitchen helper/food preparer, dishwasher, and porter. Plaintiff contends that she worked in those capacities until on or about March 7, 2019. Plaintiff further alleges that she typically worked six (6) days per week and, although her hours fluctuated slightly each week, she typically worked approximately fifty-six (56) hours per week.

With respect to her pay, plaintiff alleges that she was paid every fifteen (15) days, in cash, on a salary basis straight time for all hours worked. She contends being paid as follows:

- May 2017 – December 2017: $550/week
- January 2018 – July 2018: $575/week
- August 2018 - : $625/week
- September 2018 – November 17, 2018: $700/week
- November 18, 2018 – December 15, 2018: $650/week
- December 16, 2018 – December 29, 2018: $700/week
- January 2018 – March 7, 2019: $600/week

## III. The Alleged Facts Contested by Defendants

Defendants dispute the facts alleged by plaintiff – including, the number of hours plaintiff alleges to have worked, and the allegation that she was paid on a salary basis straight time for all hours worked. Critically, during discovery, the defendants produced records which purport to show that plaintiff took a one-hour break each day, and that the defendants paid her on an hourly basis at the statutory minimum wage rate and at time and one-half for all overtime hours. Thus, it is the defendants' position that plaintiff suffered no damages and is not owed any unpaid wages whatsoever. According to the defendants, the signed payroll records reflect that plaintiff acknowledged the accuracy of the hours worked during each pay period and, in realty, regularly took breaks over the one (1) hour allotted each day, and was even found sleeping in the employee area on multiple occasions. Furthermore, the defendants contend that plaintiff received one (1) free meal per day and, therefore, the meal credit, which amounts to between $3.80 and 5.15 per meal/per day should be deducted from plaintiff's damages calculations.

Meanwhile, plaintiff disputes the veracity of the information contained in the documents in terms of the hours worked, as well as the contention that she was paid on an hourly basis. More specifically, except for Saturdays when she received a break between the lunch and dinner shifts, plaintiff disputes receiving a break each day. Plaintiff believes this correlates with the information in the defendants' records. Indeed, plaintiff contends that the only day that the defendants deduct for break time is the 2-hour time between shifts on Saturdays, and that it was not until September 2018 that the defendants begin to note breaks taken during other days of the week.

With respect to her pay, plaintiff believes the records show that she was actually paid on a salary basis as opposed to an hourly rate. This is because there are several weeks where plaintiff was actually owed more (or less) money based on the defendants' hourly rate calculation, but was actually paid less (or more) in order to reach a specific dollar amount for the two-week pay period. In other words, for example, if plaintiff was owed $1,175 if truly based on the hourly rate alleged by defendants, she was only paid $1,150; or if plaintiff was owed $1,125, she was actually paid $1,150.

### IV.  Disputed Amount of Damages

Plaintiff estimates that she is entitled to approximately $15,000 in underlying unpaid wages, with an equal amount in liquidated damages. Defendants, meanwhile contend that the plaintiff is owed no damages.

With the factual disputes in existence, each party faced a significant risk in discrediting their adversary's evidence at trial.

### V.  The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $13,500 to resolve all of plaintiff's wage and hour claims against defendants.

### VI.  The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation given the *bona fide* disputes about the existence and value of plaintiff's claims, as well as the costs and risks associated with continuing with protracted litigation and trial.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement is not a result of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

It is respectfully submitted that this settlement should be approved because the resolution of plaintiff's claims would have likely required a trial given the factual disputes in existence. By settling now, plaintiff receives a significant amount of her calculated underlying wages even after attorneys' fees are deducted, while enabling the parties to avoid the costs and risks inherent in any trial. Based on plaintiff's counsel's assessment of litigation risks, which were discussed thoroughly with plaintiff, plaintiff made the informed decision to accept the defendants' offer of compromise. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VII. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm is to retain one-third of the net proceeds of the settlement after expenses are deducted. However, in an effort to aid in settlement, counsel has agreed to waive their costs. Thus, plaintiff's counsel seeks one-third of the settlement in fees – *i.e.*, $4,500, which is less than the firm's lodestar. Attorneys' fees in FLSA settlements are also examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement) (*citing Constantin Cionca v. Interactive Realty, LLC*, No. 15 Civ. 5123, 2016 WL 3440554, at *2 (S.D.N.Y. June 20, 2016) (approving a percentage fee that is "31.3% of the gross settlement amount" on an FLSA settlement, finding that the "percentage of the fund" method is generally acceptable in the Southern District); *see also Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement).

For all of the reasons set forth above, the parties respectfully request that this Honorable Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Hon. Katherine H. Parker, U.S.M.J.
January 22, 2020
Page 5

       The parties thank the Court for its continued attention to this matter.

                      Respectfully submitted,

                      Justin Cilenti

Enclosures

cc: Defense Counsel (by ECF)